The opinion of the court was delivered by
DeBlanc, J.
On the 6th of November, 1873, plaintiff sued her husband for a separation of property, the dissolution of the community *673 then existing between them, and to be authorized to resume the administration o£ her paraphernal effects.
On the 11th of September, 1874, judgment was rendered in favor of plaintiff, recognizing her as the owner of the silverware and household furniture claimed by her, dissolving the community which existed between her and her husband, and authorizing her to resume the administration of her paraphernal property.
That judgment — if valid — was retroactive as far back as the 6th of November,‘1873, the day on which plaintiff filed her demand for separation of property. C. 0. 2432 (2406).
After the filing of her demand, Mrs. Vickers purchased three lots of ground, one from Varner, on the 29th of August, 1874, another from Edwards on the 5th of March, 1875, and the third one at a sheriff’s sale, on the 4th of April, 1876. The evidence of the two first mentioned sales was recorded as prescribed by law — and the other merely deposited in the clerk’s office.
On the 27th of October, 1873, Block, Britton & Co., the defendants in this suit, obtained judgment against Henry E. Vickers — plaintiff’s husband — and H. Rush, for two thousand eight hundred and forty nine dollars, with four per cent interest thereon from the 15th of November, 1872, subject to a credit; and — on the 1st of November, 1877, caused a writ of fieri facias to issue on said judgment. Under that writ, the sheriff seized and advertised for sale the three lots of ground already referred to, which Mrs. Vickers claims as belonging to her, and the intended sale of which she has enjoined.
Defendants in injunction contend that Mrs. Vickers’ judgment against her husband is a nullity, for the reason — as they allege — that it was rendered on insufficient evidence, by consent of the parties, and that it was neither published nor executed.
That judgment — as we have said — recognized Mrs. Vickers as the owner of household furniture and silverware, which have not been seized, and so far as the creditors are concerned, it matters not that they are vaguely described in her own petition and in the decree. They do not claim any right which can be prejudiced by that description.
As to the evidence on which that judgment was rendered, it is that she owned and brought to her husbands’s home furniture and silverware valued by her witness at from fifteen to sixteen hundred dollars, and — to that extent — it stands uncontradieted; and that, at or prior to the date of her suit against her husband, she had on deposit, in the Louisiana National Bank of New Orleans, nearly seven thousand dollars, which were withdrawn by her twenty days after the institution of her suit. Neither she nor any witness examined on the trial has satisfactorily established her title to that deposit. She declared that she *674 had sold property belonging to her, but to whom and for what price, did not tell — that she had inherited the money, and it had been given to her by her relations — her father, mother, sisters and brothers — not one of them was called as a witness, and she could not remember how much she had received from any one of them — nor was it shown when and by whom the deposit was made.
This — however—does not affect the validity of the qualified and restricted judgment which she obtained against her husband, which was duly published, and which — partly at least — was not susceptible of any judicial execution — and, here, we refer to those clauses of the judgment which dissolved the community and authorized Mrs. Vickers-to resume the administration of her separate and paraphernal property.
In “Joyce Holmes vs. Barbin,” Mr. Justice Spofford said — as the organ of the court: “The wife merely desired to have her right to a se'parate administration of her paraphernal property recognized, and the community dissolved, on account of the disorder of her husband’s affairs. This she obtained, and the record does not authorize us to hold that any writ of execution could have effected more than was effected by the simple judgment duly advertised.
13 A. p.p. 474, 475; ante p, ■ — .
In the dissenting opinion read by Mr. Justice Spencer, in Kirkpatrick vs. Finney & Byrnes, and — in that part of his opinion to which there neither was nor could be any dispute, he said: “ In order to maintain her suit for a separation of property and dissolution of the community, it is not essential that the wife should be the owner of separate property, or that the husband should be indebted to her. It is now settled that where his affairs are so disordered and his financial embarrassments so great, as to render any earnings or acquisitions of the wife by her own industry insecure, that she may maintain such suit.
“A wife’s judgment may — therefore—be good so far as it operates a separation of property and dissolution of community — and bad so far as it establishes title to specific property or indebtedness on the part of the husband.”
30 A. p.p. 225, 226.
Article 2425 (2399) of our Code was copied from the Napoleon Code, and — in'his commentaries on the latter — Marcade said : “ Ainsi, alors méme qu’il s’agirait d’une femme qui n’a rein apporté en se mariant et a laquelle il n’est ríen échu depuis le mariage, l’administration ruineuse du mari n’en devrait pas moins faire prononcer la separation. Cette femme, en effet, a intérét a s’assurer la conservation de sa moitié dans ce qui reste encore de la communauté que dissipe le mari. Que s’il n’y a pas de biens communs, elle peut avoir un talent, une industrie, dont le produit, aprés la separation, lui donnera des ressources pour elle et *675 ses enfants, tandis que le mari, tant que dure son administration, peut tout perdre et engloutir. Et quand memo enfin cette femme ne serait en ótat de rien gagner par son travail, ne peut-elle pas dans quelques jours, recevoir des donations ou des successions qu’il lui importe de sauvegarder ?” Marcadé, vol. 5, pp. 581, 582.
So far as it decrees a separation of property, and the dissolution of the community heretofore existing between Mrs. Yiekers and her husband, and authorizes the former to resume the administration of her paraphernal property, the record fully sustains the validity of the decree of the 11th of September, 1874.
Mrs. Yiekers could — after its rendition — buy in her own name and with her own funds. She bought — that is shown by the acts introduced in evidence — three lots of ground. The sale from the sheriff to her, of the 4th of April, 1876, was not recorded, when the property,thus sold was seized by the creditors of her husband and of his former partner, whose title to said property was alone of record, and it is clear that— as to said creditors — the-sheriff’s sale upon which she relies was — in the words of the law — utterly null and void. Rev. Statutes, sec. 8189.
It matters not that the same property was — before the seizure— transferred by Edwards, who had no title to it, to Mrs. Yiekers, and that the deed passed between them has been recorded. The sale of a thing belonging to another person is null — C. C. 2452 (2427) — and it cannot be successfully contended that the recording of such an invalid sale can — as regards creditors — protect a valid title subsequently acquired and not recorded. Mrs. Yiekers herself was convinced of that fact, and did not hesitate to purchase — at the sheriff’s sale — the property to which Edwards — his vendor — neither had, nor could transfer a title.
The two other lots were sold to Mrs. Yiekers by Edwards and Yarner. The sales are assailed by her husband’s creditors as being fraudulent and simulated.
Mr. Yiekers sold to Edwards, a nephew of his wife, for $1960, on credit, a lot situated in Rayville. He sold him the whole lot, though he owned but one half of it, and it was his partner’s half in the same, which his wife bought at the sheriff’s sale. Mrs. Yiekers’ nephew sold to Parker, a gardner, employed by a brother-in-law of Mrs. Yiekers, for $2501, and on credit, the lot which he had purchased from Mr. Yiekers, and with the intention — he said — of raising commercial paper with which to transact his business. Parker had no means, and — as a matter of course — his notes could not be disposed of. He retroceded the lot to Edwards, and — on the very day it was retroceded — Edwards sold it to his aunt — Mrs. Yiekers — who paid him with'the notes which he had subscribed in favor of Mr. Yiekers, as the price of said lot. Those notes — Mrs. Yiekers declared — had been bought by her from her sister, *676 who died at her house. How they passed into her sister’s possession, we are not informed.
As to'the third lot, Mrs. Vickers alleged — in her petition, and — to obtain her injunction — swore that she had purchased it from one Varner. On the trial, she swore that she had purchased it from Lott Chapman, who was dead at the date of the trial, and who — for several years— had been Mr. Vickers’ clerk. Varner testified that he had sold that lot to Iler, and Iler to Vickers — that no deed was passed of the sale from him to Iler, from whom alone he received the price of the sale, and who asked him to make a title to Mr. Vickers. He — thereafter—transferred the lot to Chapman, but the act of transfer to Chapman was returned to him by Mr. Vickers, who asked him to sell to Mrs. Vickers. He did so.
Iler corroborated the declaration of Varner, and — in addition— testified that he had sold the.lot to Mr. Vickers, in payment of a debt due him — the amount of which he did not mention — but which he had contracted before his — Mr. Vickers’ — marriage. Mr. Vickers — he said— was owing Lott Chapman, but how much ? He was not asked and did not tell. It was to that deceased clerk that Mrs. Vickers testified that she had paid the six hundred dollars, which — in the act of sale from Varner to her, he acknowledged to have received from her.
The trails of simulation can never be completely obliterated, and two of the acts on which Mrs. Vickers bases her demand bear the impress of those characteristic trails. They are not supported by a single substantial probability, and — were we to admit that she had the means to buy — we would, nevertheless, be compelled to hold that the deeds from Varner and Edwards to her are but empty forms, which — it is evident — are without even a tinge of reality. As to the sheriff’s sale, it was not recorded, and the title to the property adjudicated to Mrs. Vickers, at that sale, still appeared of record as belonging to her husband and his partner, when that property Was seized to satisfy a judgment rendered against them.
We are told that, if the property does not belong to Mrs. Vickers, it belongs to Varner, Edwards, or the succession of Chapman, and not to Mr. Vickers. We believe otherwise. But be this as it may, those pretended owners are not before us, nor have they authorized plaintiff to enjoin the execution of the writ issued on the creditors’ judgment.
To protect their rights, defendants have had to employ counsel and incur expenses, and they are certainly entitled to a portion of the damages which they claim.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed; and — proceeding to render such judgment as should have been rendered by the lower court,
*677 It is further ordered, adjudged and decreed that plaintiff’s injunction is dissolved, the sales from John R. Edwards and George H. Yarner to her, passed — the first, on the 5th of March, 1875 — the other, on the 29th of August, 1874, declared to be simulated, and the property seized by the sheriff of the parish of Richland subject to the enjoined seizure.
It is further ordered, adjudged and decreed that defendants recover —as damages — from Mrs. L. Virginia Yickers and Geo. M. Moseley, G. A. Maes and I. L. Bois — the sureties on her injunction bond — the sum of two hundred and fifty dollars and the costs in both courts.